JOHN GASELY and ANNA MARIA GASELY'S HEIRS and ADMINISTRATOR *v.* THE SEPARATISTS' SOCIETY OF ZOAR ET AL.

An incorporated society called "Separatists" migrated from Germany and settled at Zoar, in Tuscarawas county, in 1817, in straitened circumstances. One of the members purchased a large tract of land upon credit, taking a deed in his own name and giving his individual notes and mortgage to secure

payment, but with the understanding that each of the members should·have such portion of the land as he should pay for out of his private means.

In 1819 the plan of several interests was abandoned by the members and that of a *community of property* adopted, and in the articles of association of that year the members renounced all separate interests in the property and devoted the same and all future acquisitions to a common fund for the perpetual use and benefit of the society and under the management of the directors, all the members participating equally in the use of the joint property so long as they continued to be members and to labor for the society; but that their respective interests in the same and right to support therefrom should cease upon voluntary withdrawal or just expulsion from the society, and should not be transmissible in case of death to their respective heirs at law.

In 1824 the members adopted new articles, but retained the same general features, and " A," an unmarried female of full age, became a member by signing the articles of that year, but contributed nothing to the common fund save her future labor and skill.

In 1833, after the society had been incorporated, " A," with her then husband, signed the constitution containing like provisions in regard to the property and rights of the members, and remained members of the society, supported out of the common property, until 1845, when the husband was, for just cause, expelled, under the provisions of each and all said articles. " A," thereupon, unwilling to separate from her husband, voluntarily departed from Zoar, and has remained away ever since.

In January, 1854, " A" filed her petition against the corporate authorities, etc., asking an account and assignment to herself in severalty of a proportionate share of all the real and personal estate.

Held that " A," by the facts above stated, does not show any present legal or equitable right to demand such account and partition of the property.

APPEAL.—Reserved in the district court of Tuscarawas county.

The original petition filed in the court of common pleas of Tuscarawas county by John Gasely and Anna Maria Gasely, his wife, states that said Anna Maria, in 1817, being then unmarried, migrated from Germany to Zoar, in Tuscarawas county, and was there associated with an unincorporated society called " The Separatists' Society of Zoar," and that she, in 1824, being single and of full age, signed the articles of association of that year. That she married the said John in 1830, and in May, 1833, in conjunction with her husband, signed further articles of association and continued a member of the association and to labor for its benefit till 1845, when her husband, having been expelled or driven off by said society, she was compelled to leave also or abandon him and their children, which she was unwilling to do. That the

11

property of said association, real, personal and mixed, is very large, amounting to about $1,000,000, and was purchased for the use of the members, and the products of their labor and skill applied to its payment, and that she is entitled to an equal share, being about the one hundredth part thereof. That the legal title to the real estate was in Joseph M. Bimeler until his death, who, by his last will, devised and bequeathed the same to the society. That the society and its trustees, since its organization under its charter, have applied the property of the original members wrongfully to defend themselves from legal responsibilities. That the other persons interested with her are many of them to her unknown and too numerous to be made parties without incurring delays amounting to a practical denial of justice. She, thereupon, demands judgment for her interest in the property and $20,000 damages for its detention, a dissolution of the society, an account of its property and effects, and of moneys wrongfully expended in litigation, and partition and distribution ; also, a conveyance, with special warranty, for her share of the real estate, etc.

The answer of the trustees sets forth in substance :

That prior to 1817, a religious society was formed in Germany called " Separatists," because of their separation from the established churches of that country, and a large number of them, including the said Anna and her father, in order to enjoy liberty of conscience and free toleration of religious belief, migrated to this country, arriving in the city of Philadelphia in April of that year, in an impoverished condition, and were aided there and helped on their way to Ohio by contributions of the " Friends."

That while in Philadelphia, Joseph M. Bimeler purchased of Godfrey Haga 5,500 acres of land in Tuscarawas county, on a credit, for $15,000, receiving a deed in his own name, and giving his individual notes and mortgage to secure the payment; but with the understanding that each member of the society should have an interest therein in proportion to the amount he might contribute to its payment.

That soon after their arrival at Zoar, in the fall of that

year, the original plan of individual interests was abandoned, and they entered into articles of association, dated April 19, 1819, creating a common unity of interests, present and prospective, whereby all the property of individual members, and their future earnings, should become the common stock of the association, to be taken care of and managed by directors, to be elected annually by the members; which articles were signed by fifty-three males and one hundred and four females.

That in 1824 amendatory articles, containing like features, were drawn up, and signed by about sixty males and one hundred females, under which, with those of 1819, the affairs of the society were thereafter managed.

That on the 6th February, 1832, the society was incorporated by a law of this state, by the name of " the Society of Separatists of Zoar," conferring upon said society the ordinary and usual powers of a corporation.

That on May 14, 1833, at a meeting of the members of the society, called in pursuance of said act of incorporation, an organization was effected and a constitution adopted for the government of the society, under which its affairs have been regulated ever since. It is also averred that all members under the articles who remained in the society at the adoption of the constitution, became members of the society in its corporate capacity.

That Bimeler held the legal title of the land purchased of Haga, and of all the other lands purchased by the society, while living, but devised the same to the society by his last will and testament.

That the father of the said Anna was one of the original emigrants and members of the society, and that Anna accompanied him as a member of his family, and was about eleven years old when they arrived at Zoar, and remained with him, laboring for and supported by the society, till she attained full age in 1824, when she signed the articles of that year, and became herself a member of the society.

That she was married before 1833, and on the 14th day of

May, in that year, in conjunction with her husband, signed the constitution adopted under the act of incorporation.

That the husband of the said Anna was "rightfully, and for good cause, expelled from said society, March 4, 1845," but denies that the trustees ever required her to abandon her husband and children, and avers that for some time before said expulsion, neither the husband nor the said Anna had rendered any service to the society, although often requested and directed to do so.

That shortly after her husband's expulsion, the trustees addressed her notes that if she then or thereafter should ask the society for aid, her rights as a member should be respected, and that if she or her children would return and employ themselves in the affairs of the society, they should receive a support, and that the directors also twice sent her needful supplies, but that she removed to Dover with her husband, and for most of the time since has been in litigation with the society.

The trustees also deny that said Anna is the owner of any part of the property held by the society. They admit that she labored for it while a member and received therefor the consideration stipulated in her express contract with the society, and insist :

1st. That the articles of 1824 are a valid contract between her and the society and bar her action.

2d. That the contract of her and her husband with the society, as evidenced by the constitution of 1833, is valid and obligatory upon her.

3d. That by the terms of said contracts, the liability of the society to support its members continues so long only as they remain with and labor for the society.

4th. That the society has in all things complied with the contracts so made with the said Anna.

The constitution and the several sets of articles of association are made parts of the answer.

The cause was submitted to the court of common pleas without the intervention of a jury, and a finding and judgment rendered in favor of the defendants.

An appeal was thereupon taken by the plaintiff to the district court, where, upon suggestion of the death of said Anna Maria, her heirs and administrator were made parties, and, upon leave, a demurrer to the answer of defendants was filed by them, and the questions arising upon the demurrer, were reserved for decision in this court.

The articles of March 18, 1824, upon which the opinion of the court is predicated, are long, verbose, and for the most part, occupied with details for the management and control of the property and affairs of the society, and it is only necessary to refer to such parts thereof, as bear on the points considered by the court.

The articles, twelve in number, are perceded by a preamble, stating the objects and purposes of the association, and among others that the parties thereto " seek and desire, as a bond of union," and " out of pure christian love and persuasion," thereby " to unite their several personal interests into one common interest."

Article 1, reads as follows: " We, the undersigned members of the second class of the separatists, declare, through this first article, the entire renunciation and resignation of all our property of all and every dimension, form and shape, present and future, movable or immovable, or both, for ourselves, our heirs and our posterity, with all and every right of ownership, titles, claims and privileges to the aforesaid society of separatists, with the express condition that from the date of the subscription of each member such property shall be forever and consequently after the death of such members, remain the property of the said separatist society."

Articles 2 and 8, prescribe the qualifications and mode of admission of new members, and provide, among other things, that the applicants must be of full age—males twenty-one and females eighteen — and that they must also sign the articles.

Articles 3 and 9, provide for the election, at suitable intervals, of three directors, by a majority of the members, and prescribe their general powers in the custody and man-

agement of the property, for the benefit of the association; which powers are full and ample.

By article 4, the members bind themselves to " apply all their strength, good will, diligence and skill, in the most faithful manner, to the general benefit of the society and the satisfaction of the directors."

Article 5, relating to inheritances of deceased members, of which the directors are empowered to take possession, contains the following clause: " The children, friends or relations can not become heirs of their parents, friends or relations, since all the property of the members is by them doomed to be and remain forever the property of the said society."

Article 11, prohibits any claim, by members, upon the society for services rendered, and also all claims by backsliding and excommunicated members, to any share in the property and effects of the society.

Article 7, confers upon the " arbitrators," for the time being, which is declared to be the supreme judicatory of the association, the power to excommunicate arbitrary and refractory members, and to cross out their signatures and deprive them of all future enjoyment of the society.

These articles are signed by the members, sixty males and one hundred females, and attested by the three directors then in office, and also by Joseph M. Bimeler, as arbitrator.

*David Quinn*, for plaintiffs.

*J. C. Hance* and *Henry Stanbery*, for defendants.

PECK, J.—The original complainant, Anna Maria Gasely, claiming to be a member of an unincorporated religious society, called " The Separatists' Society of Zoar," and a joint and equal owner with her associates, of a large real and personal estate belonging to the association, in the county of Tuscarawas and elsewhere, sought in this action, to have an account of all its real and personal estate, and an assignment to her in severalty of her interest therein; and this

.right, since her decease, pending the litigation, is re-asserted by her heirs and personal representatives, who are now parties to the suit.

The right of Mrs. Gasely, and those claiming under her, to an account and partition of the Zoar estate, if such right exists, has its origin in the articles of 1824, which were signed by her on attaining majority in that year.

Prior to that time, she was not a member nor entitled to a proportionate share of the property. Her father was, however, a member of the society, and she had been living with him as one of his family, from his arrival at Zoar, in the fall of 1817, and was " employed and supported (by the society) as the children of other members were." Her father was entitled to her services during minority, which he appropriated to the use and benefit of the society of which he was a member. Mrs. Gasely's services, therefore, if beneficial, conferred no right upon her to claim compensation on attaining full age, and imposed upon the association no legal or equitable obligation to account with her therefor.

Nor does it appear from the pleadings that she had any separate property, which she then surrendered to the common fund, of which partition is now demanded; but her interest therein seems to have been entirely *prospective*, and acquired solely by force of the articles, and subject to the limitations therein expressed.

In looking to the articles, to ascertain the nature and extent of her interest, we find one of its fundamental features, borrowed, substantially, from those of 1819, was, that there should not thereafter be any individual ownership in the property and effects of the association in any of its members ; but that the same, and all future acquisitions resulting from the labors and enterprise of any and all its subscribers, should constitute a common fund, devoted exclusively to the use of the society, under the management and control of directors chosen by the members. The subscribers thereby solemnly renounced, for themselves and their heirs, all right of separate ownership in the joint property, present and prospective, and declared that it should be and remain the

property of the association ; agreeing to work for and faith-fully serve the society, receiving only a support, in sickness and in health, from the joint property, and also stipulating, that upon *voluntary retirement* or *expulsion, for just cause,* their respective interests in and right to support from the joint estate, should cease and determine.

It also appears from the pleadings that said Anna Maria, some time in the year 1830, married her co-complainant, John Gasely, who was also a member of the society, and that both signed the articles of 1833, which contained the same general features as to the property and its ownership. That they both continued to live at Zoar, as members of the community, until 1845, long after the society was incorporated That John Gasely was expelled from the society " for just and sufficient cause," in 1845, and that thereupon Mrs. Gasely, choosing rather to follow her husband than to remain, voluntarily departed and remained away until after the commencement of this suit, notwithstanding the directors frequently notified her, that the society were still willing to receive and care for herself and her children, if they would but return.

It is manifest from this statement as to the origin of Mrs. Gasely's interest in the Zoar property, the agreement upon which it is based and her subsequent withdrawal from the society, that if the articles of 1824 are to any extent binding upon the parties, she was not, nor are her heirs now, entitled to the relief claimed in the petition.

She had not any right to any part of the Zoar estate, outside or independent of the articles of 1824, and the right she asserts under and by virtue of those articles, ignores a fundamental feature of the association, which has been uniformly adhered to from its original insertion in the articles of 1819, to the present time.

In 1824, Mrs. Gasely being then of age, unmarried and competent to contract for a consideration sufficient in law— *her support out of the common fund while a member of the society*—agreed with the other subscribers to become a member, and in common with them, to labor for the accumulation

of a *joint* or *common* fund in which none of the subscribers were to have separate or transmissible interests, and that all her interest therein, was to cease upon her withdrawal, or just expulsion from the society.

Nothing could be more opposed to the terms and manifest intent of the articles than to hold, that any one of the sub-scribers upon affixing his signature thereto, acquired a pro-portionate share in the property then belonging to the society, which was subject to withdrawal by him from the common fund on his voluntary retirement and transmissible upon his decease, to his heirs at law ; and yet the claim of the plain-tiffs seems to go this length.

At the time Mrs. Gasely signed the articles, the society had been in successful operation for several years, during which period it had not only acquired an equitable interest in large and valuable tracts of land and a large personal estate, but had laid the foundations of its future prosperity broad and deep.   These facts, deducible from the pleadings, give pecu-liar significance to the provisions prohibiting individual ownership, and declaring the inviolability of the common property, and if the language were less clear than it is, we should be slow to give the articles a construction consistent with the claim of the plaintiffs.   It would render the ligature so carefully prepared, a mere rope of sand, and confer upon incoming members, rights to which they are not equitably en-titled as against the older members.

We must regard the withdrawal of Mrs. Gasely so far as her *continuing rights* to the common property are concerned, as *voluntary* on her part.   The right of expulsion for good cause, is not only necessary for the preservation of harmony and good order, but is expressly reserved in the articles.   It is conceded by the demurrer, that it was not exercised, in this instance, arbitrarily and without just and sufficient cause. Mrs. Gasely may have been, and doubtless was, placed in a trying position ; but this should not deprive the society of the right of self-protection secured to it, and the most that can be said is, that it was her misfortune to be so connected by ties of affinity to one whom it became necessary for the

society to expel. No improper influence seems to have been exercised by the directors. They left her free to choose for herself, and indeed, the answer avers a readiness still to receive her and her children, if they will but return and resume their duties to the society, it being willing to regard her case as an exception to the general rule.

It is said, however, that the articles, so far as they attempt to transfer the joint property from the individual members to the society, and create a common fund devoted exclusively to the uses of the association, to the exclusion of outgoing members, and the heirs of such as may have died, are in law invalid :

1st. Because there was no grantee capable in law of receiving and holding the property.

2d. Because the articles, if enforced, would create a perpetuity, which public policy forbids.

If these propositions were true, it is difficult to see how they could avail Mrs. Gasely or her heirs; especially, in regard to all that portion of the joint property, which had been acquired before the articles of 1824 were signed.

Mrs. Gasely acquired all the right which she or they now possess in that portion of the property, by virtue of the articles. It was a concession by the former owners to the incoming members upon certain terms, and *only upon those terms.*

If the grant is inoperative for want of a grantee *capable of receiving and holding the property*, or if the attempted transfer to the collective membership for the exclusive use of the society, is void as creating a *perpetuity*, the property necessarily reverts to its former owners and does not devolve upon the incoming members, in whom it was not previously vested, and who acquired no separate interest therein by the articles.

It is also difficult to perceive how Mrs. Gasely or her heirs are entitled to a *divisible* share in the subsequently acquired property, in professed requital for services rendered by her after becoming a member, and for which, as between herself and the remaining members, she has already received *all that her contract entitled her to demand.* The case here is not that

of a futile effort to transfer property, resulting in a reverter of the property to its former owner ; but a claim for *further compensation* for services rendered under an agreement, where the pleadings admit that the compensation stipulated for, *has been fully paid and received.*

The services of Mrs. Gasely undoubtedly contributed, in some degree, in aiding the agents of the society to acquire the property ; but the property itself never belonged to her in her own right, and the articles under which it was acquired, expressly preclude her from claiming any *divisible* interest in it. Those who remain may not perhaps be able to hold it; but the weakness of their title, surely can give her no right to claim it in direct contravention of her express agreement.

Mrs. Gasely contracted for only a *qualified interest* in the property to be accumulated by their joint labors, and so long as she maintained her connection with the society, she, in common with her associates, had the use and benefit of all of it, and thereby received all the compensation she had stipulated to obtain.

The society still holds that property unimpaired and undisturbed, though Mrs. Gasely, by the very terms of her agreement, has no longer any right to its usufruct. Upon what principle, then, can she ask to disturb a possession and uproot a title which her own agreement contributed to create and establish, and as to which she had not any prior and paramount right ? Her labor contributed to its acquisition, it is true, and so did the labor of any outsider the company may have employed and paid his stipulated wages. Why should the rule hold good as to the one and fail as to the other ? Both are now strangers to the property and both have received the entire compensation agreed to be paid to them.

It is also said, in this connection, that the cession in the articles of individual interests to the *collective membership* is void under Sec. 1 of the " act for prevention of frauds and perjuries," which avoids all deeds of gift and conveyances of goods and chattels made in trust for the use of the person or

persons making the same, inasmuch as the use is in part for the grantors themselves.

But this statute, if applicable to the mere substitution of an *indivisible* for a *divisible* use, of which grave doubts may well be entertained, would not avail the present plaintiffs, for the reasons already stated. The property then owned by the society and to which their ancestress had no previous title, could not revert to her, and a separate interest in the subsequent acquisitions was excluded by the very terms of her contract of service; and, secondly, the statute was enacted to prevent frauds upon creditors and purchasers, and is satisfied by protecting their rights and leaving the qualified use good as against the grantor, his heirs and representatives.

This aspect of the case is decisive of the rights of the plaintiffs and renders it unnecessary to determine the other questions urged upon our notice in regard to the character of the association of 1824 and its *legal capacity* to receive and hold a surrender by individual members of their separate interests in the joint effects, and the further and perhaps still graver question whether the perpetual devotion of the property and its proceeds to the uses of the society, qualified by the powers delegated to the directors and a majority of the members, creates such a *perpetuity* as avoids the surrender.

We regard it simply as a case in which the equity powers of the court are invoked to decree an account and partition in favor of those who do not show any present legal or equitable right to the property in which they claim to participate, and found their right principally, if not altogether, upon the *legal incapacity* of the present possessors to hold it.

It is proper for us to remark that the validity of the articles of 1824 in the very respects in which they are now assailed has been twice determined in the courts of the United States in the case of *Goesele et al.* v. *Bimeler et al.;* first in the circuit court (5 McLean 223), and afterward, on appeal, in the supreme court (14 How. 589), and in both courts their validity in these respects was distinctly affirmed and the right of individual members and their representatives to partition

denied in a case in some respects much stronger than the one under consideration.

Goesele was one of the *original* members and had contributed to some extent to the general fund *out of his private means.* He had also labored to improve portions of the estate before the plan of a community of property had been adopted and while the original understanding that each member was to have as much land as he could pay for prevailed. He signed the articles of 1819 and those of 1824 and died *in full membership* in 1827, before the company was incorporated. Upon his decease his heirs at law sought in that action to obtain partition, and their right to it depended, of course, upon the invalidity of the articles of 1824, as in that event he had a *pre-existing* interest in the property.

The cause seems to have been closely contested in both the circuit and supreme courts, and a unanimous decision affirming the validity of these articles was pronounced.

We have not deemed it necessary, in disposing of the case before us, to determine the validity of the articles of 1824; but inasmuch as the decision in the "Goesele case" has been severely and somewhat rudely criticised by the counsel for the plaintiffs, we take this occasion to remark that, after an examination of the opinion, we are not prepared to say that the decision was incorrect, and it is certainly sustained by several decisions closely resembling it. *Schriber* v. *Rapp,* 5 Watts, 351; *Baker et al.* v. *Nachtrieb,* 19 How. 126; *Waite* v. *Merrill et al.,* 4 Greenleaf Rep. 102; *Gass & Bonta* v. *Wilhite et al.,* 2 Dana 170.

We have followed the lead of counsel in disposing of this case upon the articles of 1824, but we do not wish to be understood that the articles of 1833, signed by Mrs. Gasely during coverture, with the assent of her husband, and the acceptance by them of the act of incorporation, coupled with twelve years' acquiescence and affirmative action under it, are to be entirely disregarded as a *defense* to an action asking equitable relief; but the question is intentionally left open and undetermined, to be considered hereafter should a case requiring its application arise.

Demurrer to answer overruled, and cause remanded to dis-trict court for further proceedings.

SUTLIFF, C.J., and BRINKERHOFF and SCOTT, JJ., concurred.

GHOLSON, J., did not sit in the case