CHARLES A. BURT, Appellant, *v.* THE ONEIDA COMMUNITY (Limited) et al., Respondents.

Plaintiff was a member of an unincorporated association called "The Oneida Community." By its articles of association, which were signed by plaintiff, each subscriber surrendered his individual property, and it became an inseparable part of the capital of the community; it was also entitled to the earnings of all the members. Each member was at liberty to withdraw at any time, but in case he did so, he was not entitled to take, or demand as a right, any share of the joint property. There was also a mutual stipulation that no member would ever bring an action or proceeding to recover wages or compensation for services, or to recover any property contributed, or would make any claim or demand therefor. Plaintiff contributed nothing to the capital of the community; he had acted as traveling salesman for it, in disposing of goods, in the manufacture and sale of which it was engaged; he left it and entered the employ, as a traveling salesman, of a company a rival of the community in such manufacture and sale. Plaintiff wrote to the administrative council of the community, notifying them of what he had done, stating that he proposed to change his place of residence, and retain his earnings, but did not look upon the change as a complete withdrawal from the community, and he did not intend to make any settlement on leaving, and if he returned, he would bring all his earnings. The administrative council adopted a preamble, reciting that plaintiff had of his own accord, and without the consent of the community, entered into the service of another company, for his own individual interest and profit, followed by a resolution declaring "that he had by this act severed his connection with the community, and can no longer be recognized as one of its members." This was referred to a meeting of the members of the community termed the "family meeting," and was unanimously confirmed. Plaintiff thereupon brought this action, asking that he be adjudged to be still a member of the community, and a partner or owner with the other members as tenants in common of the property; also asking for an accounting, and a division of the property among the members. *Held*, that viewing the community simply as a business undertaking, it was not unlawful; that plaintiff's acceptance of employment by another company, and retention of his earnings, was a breach and a renouncement of his obligations as a member of the community, and terminated his right to share in the enjoyment of the use and possession of its property; that the action of the community was not an expulsion of plaintiff, but simply a declaration as to the effect of his action, and a refusal to acquiesce in his reservation of a right to retract his withdrawal; and, therefore, that the action was not maintainable.

Plaintiff claimed that by a well established custom of the community, a retiring member was entitled to a settlement and an allowance. *Held*, that plaintiff was estopped from making such claim, by the statement in his letter of withdrawal that he did not expect to make any settlement on leaving.

(Argued February 7, 1893; decided February 28, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made November 17, 1891, which affirmed a judgment in favor of defendants entered upon the report of a referee.

This was an action in equity brought by plaintiff, a member of the Oneida Community, an unincorporated association, against the Oneida Community (Limited), a domestic corporation, and certain individuals alleged to be members of said Oneida Community.

The relief sought was that an alleged expulsion of plaintiff from said Oneida Community be adjudged void, and that he be adjudged a member thereof; that an alleged dissolution of said community be deemed illegal and void; that the Oneida Community (Limited) should be adjudged to hold the property in its possession in trust for plaintiff, and the other members of the Oneida Community; that the members of the latter be adjudged partners or owners of such property as tenants in common, and that an accounting be had, and a decree be rendered for a division and distribution of the same between them.

The facts, so far as material, are stated in the opinion.

*George H. Hart* for appellant. The alleged expulsion of Mr. Burt is illegal and void. ( *Wylde* v. *N. R. R. Co.*, 53 N. Y. 156; *Grand Lodge* v. *Cohn*, 20 Ill. App. 335; *Gaus* v. *Wilhite*, 2 Dana, 170; *Lafond* v. *Deems*, 81 N. Y. 513; *Austin* v. *Searing*, 16 id. 123; *People* v. *Medical Society*, 32 id. 194; *Labouchere* v. *Warncliffe*, L. R. [13 Ch. Div.] 347; *Hutchinson* v. *Lawrence*, 67 How. Pr. 38; *Chambers* v. *Clearwater*, 1 Keyes, 310; *Queen* v. *Justices*, 2 B. 753; *Rich-*

*ardson* v. *Welcome,* 6 Cush. 331 ; Cooley on Const. Lim. [5th ed.] 310 ; *Wills* v. *Gates,* 18 Barb. 554 ; Angel & Ames on Corp. [10th ed.] 420 ; *People* v. *S. F. B. Socy.,* 24 How. Pr. 216 ; *Austin* v. *Searing,* 16 N. Y. 112 ; *Heath* v. *Prest., etc..,* 7 Abb. Pr. 251 ; *Rorke* v. *Russell,* 2 Lans. 244–248 ; *Dunbar* v. *Trustee, etc.,* 5 Cow. 462 ; *People* v. *Med. Socy.,* 24 Barb. 570 ; Bacon on Ben. Soc. §§ 99, 100 ; *In re L. I. R. R. Co.,* 19 Wend. 37 ; *Evans* v. *P. Club,* 50 Penn. St. 170 ; *Baggs Case,* 11 Co. 92 ; *Roehler* v. *M. A. Socy.,* 22 Mich. 86 ; *Hassler* v. *P. M. Assn.,* 14 Phila. 233 ; *Murdock* v. *P. Academy,* 12 Pick. 244 ; *Hutchinson* v. *Lawrence,* 67 How. Pr. 38 ; 40 Hun, 546 ; *Hopkins* v. *Marquis of Exeter,* L. R. [2 Eq.] 63 ; *Loubat* v. *Le Roy,* 40 Hun, 546.)   Burt never received any written charges or notice of charges which he was entitled to receive as a necessary preliminary to any proceedings to expel him.   (*People ex rel.* v. *Schmidt,* 24 How. Pr. 221 ; *Wechtel* v. *N. W. Society,* 84 N. Y. 30 ; Bacon on Ben. Soc. §§ 101, 102.) Burt never received any notice that the council or business board, or any body of members of the community intended to act upon the matter of his expulsion.   He was entitled to such notice specifically stating the time and place of such proceedings, and also entitled to be heard in his defense.   The omission to serve him with such notice is fatally defective, and of itself renders all proceedings null and void.   (*Loubat* v. *Le Roy,* 40 Hun, 551 ; *Gebhard* v. *N. Y. Club,* 21 Abb. [N. C.] 248 ; *People ex rel.* v. *Schmidt,* 24 How Pr. 221 ; *Wechtel* v. *N. W. Society,* 84 N. Y. 30 ; *Hutchinson* v. *Lawrence,* 67 How. Pr. 38 ; Bacon on Ben. Soc. 102, 103 ; *People ex rel.* v. *Y. M. F. M. B. Society,* 65 Hun, 359 ; *People ex rel.* v. *M. M. Union,* 47 id. 273 ; *Labouchere* v. *Earle,* 28 W. R. 367 ; *Oleny* v. *Brown,* 51 How. Pr. 92 ; *Whitey* v. *Brownell,* 2 Daly, 329 ; *Capel* v. *Child,* 2 C. & J. 558 ; *Saltus* v. *Everett,* 20 Wend. 140 ; *Austin* v. *Searing,* 16 N. Y. 123 ; Angell & Ames on Corp. 439–459 ; *People* v. *Bachelor,* 22 N. Y. 132 ; *Lafond* v. *Deems,* 8 Abb. [N. C.] 344.)   The plaintiff's right to maintain this action is consistent with the covenants of the contract of association. This assumes that the contract is good

and valid and that he is still bound to its obligations. The orig-
inal members, of whom the plaintiff is one, entered into asso-
ciation without signing written articles. (*R. M. Co.* v. *Ripley*,
77 U. S. 961; Fry on Spec. Perf. § 286; Story's Eq. Juris.
§ 736; Smith on Equity, 220; 1 Add. on Cont. § 393; *U. S.*
v. *Peck*, 102 U. S. 64; *Lloyd* v. *Loring*, 6 Ves. 733; *Belton*
v. *Hatch*, 109 N. Y. 294; *Tarbell* v. *West*, 86 id. 280; Bisp-
ham's Eq. §§ 198, 219, 232.) The Oneida Community being
a mere voluntary association, is deemed to be a mere partner-
ship in the courts of this state. (*Fairchild* v. *Fairchild*, 64
N. Y. 471; *McMahon* v. *Rauhr*, 47 id. 70; *Wells* v. *Gates*,
18 Barb. 554; *Gates* v. *Frazer*, 6 Ill. App. 229; *Morris* v.
*Peckham*, 58 Mich. 476; *Buchan* v. *Sumner*, 2 Barb. 165;
Story on Cont. [4th ed.] 266, 267, § 203; Pars. on Part. 6, §§ 13,
208; *Nubans* v. *Gillies*, 75 N. Y. 202; *Collumb* v. *Read*, 24
id. 502; *Bulkley* v. *Bulkley*, 11 Barb. 43; *Menagh* v. *White-
hall*, 52 N. Y. 158; *Gosele* v. *Bimeler*, 14 How. [U. S.] 172.)
The real estate was contributed and acquired by the members
for the use, benefit and profit of the association or partnership
while the association or partnership lasted. No valid trust could
have been created by agreement of the parties so as to vest
the same in the property holders as trustees for the uses of the
association. The only trust was that which resulted from the
relations of the parties — a resulting trust created by rule of law.
(Girard on Tit. 232–236, 260–262, 287–302, 323, 362, 607;
*McCanghal* v. *Ryan*, 27 Barb. 401; 1 R. S. 726, §§ 36–39;
*Kirkpatrick* v. *Johnson*, 15 N. Y. 322; *Boynton* v. *Hoyt*,
1 Den. 53; *Gott* v. *Cook*, 7 Paige, 521; Willard's Eq. Juris.
[Potter's ed.] 424, 569–598, 736; *Maurice* v. *Maurice*, 43 N.
Y. 303; *Levy* v. *Levy*, 33 id. 97; *Bascom* v. *Albertson*,
34 id. 584; *Holmes* v. *Mead*, 52 id. 332, 339; *White* v.
*Howard*, 46 id. 144; Tyler's Am. Eccl. Law, § 102; *Petty*
v. *Tooker*, 21 N. Y. 267; *Adams* v. *Perry*, 43 id. 487;
*Holland* v. *Alcock*, 108 id. 312; Bispham's Prin. of Eq. [4th
ed.] 179; Laws of 1868, chap. 803; Laws of 1813, chap. 60;
*Goddard* v. *Pomeroy*, 36 Barb. 546; *Jackson* v. *Cory*, 8
Johns. 385; *Hornbeck* v. *Westbrook*, 9 id. 73; *Hornbeck* v.

*Sleight,* 12 id. 198; *Betts* v. *Betts,* 4 Abb. [N. C.] 317–412; *White* v. *Howard,* 52 Barb. 294; *Ringrose* v. *Beamham,* 2 Cox, 384; *Williams* v. *Gillies,* 75 N. Y. 197; *Collumb* v. *Read,* 24 id. 505; *Marvin* v. *Marvin,* 53 id. 607; *Church of Redemption* v. *Grace Church,* 68 id. 577; *Robbins* v. *Robbins,* 89 id. 256; *Ryan* v. *Dox,* 34 id. 307; *Marie* v. *Garrison,* 13 Abb. [N. C.] 328; *Tarbel* v. *Bradley,* 7 id. 273; 86 N. Y. 280; *Roulston* v. *Roulston,* 64 id. 652; *Austice* v. *Brown,* 9 Paige, 448; *Safford* v. *Hyndes,* 39 Barb. 625; *Reitz* v. *Reitz,* 80 N. Y. 538; *B., N. Y. & E. R. R. Co.* v. *Lampson,* 47 Barb. 533; *Joy* v. *Barrel,* 16 Mass. 223; *Fisher* v. *Fields,* 10 Johns. Ch. 505; *Gormez* v. *T. Bank,* 4 Sanf. 106; *Corser* v. *Leggett,* 25 Barb. 391–394; 1 Perry on Trusts, 81–84; *Chapman* v. *Porter,* 69 N. Y. 276; *Neilly* v. *Neilly,* 23 Hun, 651; *Day* v. *Roth,* 18 N. Y. 448; *Kennedy* v. *Porter,* 109 id. 547.) Mr. Burt is entitled to an equal share of all the property of the community, whether the association be an ordinary partnership or a universal partnership. (*Grosvernor Case,* 188 Mass. 46; *Waite Case,* 4 Greenl. 281; *Goesele Case,* 14 How. [U. S.] 176; *Gaseley Case,* 13 Ohio St. 410; *Schriber Case,* 5 Watts. 226; *Nachtrieb Case,* 3 Wall. 78; *Lenox Case,* 3 id. 137; *Uhlman* v. *N. Y. L. Ins. Co.,* 109 N. Y. 421; *Ratzer* v. *Ratzer,* 1 Sten. 137; *Goesele* v. *Bimeler,* 14 How. [U. S.] 248; *U. S. Bank* v. *Binney,* 5 Mason, 183; 1 Lind. on Part. [4th ed.] 55; Collyer on Part. § 28.) The conveyance of all the property of members of the community by the property holders to any person except to a fellow member was illegal. If the property holders were authorized to convey it to the corporation, the corporation is not capable of legally holding and using it for the purposes of the Oneida Community. (Laws of 1874, chap. 324; Laws of 1887, chap. 546; *N. Y. & S. C. Co.* v. *Fulton Bank,* 7 Wend. 412; *People* v. *B., H. T., etc., R. R. Co.,* 12 Abb. [N. C.] 230; *People* v. *N. R. S. R. Co.,* 21 id. 164, 196; 16 Civ. Pro. Rep. 36; *Hitchcock* v. *Galveston,* 95 U. S. 341; *Vidal* v. *Girard,* 2 How. Pr. 788; *White* v. *Howard,* 46 N. Y. 299; Gerard on Titles, 264, 269; *Holland* v. *Alcock,* 108 N. Y. 312; Willard's

Eq. Juris. [Potter's ed.] 569 ; *Hawley* v. *James,* 5 Paige, 487 ; *Wilder* v. *Ramsay,* 95 N. Y. 7 ; *Van Rensselaer* v. *Akin,* 22 Wend. 549 ; *Newton* v. *Bronson,* 13 N. Y. 587 ; *Hertwell* v. *Bogert,* 3 Ed. Ch. 20 ; *Thorn* v. *Kramer,* 15 Barb. 112, 116 ; *Ridgley* v. *Johnson,* 11 id. 327 ; *Grimmel* v. *Buchanan,* 1 Daly, 538, 546 ; *Lewis* v. *Ingersoll,* 1 Keyes, 347, 356 ; *Jackson* v. *Hartwell,* 7 Johns. 420 ; *Bryce* v. *St. Louis,* 18 How. Pr. 131 ; *People* v. *U. Ins. Co.,* 15 Johns. 350 ; *N. Y. F. Ins. Co.* v. *Ely,* 2 Cow. 678 ; *Darmouth College* v. *Woodworth,* 4 Wheat. 518 ; *Halstead* v. *Mayor, etc.,* 3 N. Y. 433 ; *Austin* v. *Searing,* 16 id. 112 ; *Lloyd* v. *Loring,* 6 Vesey, 733 ; *Black Assn.* v. *Munday,* 21 Abb. [N. C.] 99 ; *McGlynn* v. *Post,* 21 id. 97.) The conveyance of the property to the corporation is fraudulent. (*Goesele* v. *Bimeler,* 14 How. [U. S.] 238 ; *Gass* v. *Whilhite,* 2 Dana, 170 ; *McCanghal* v. *Ryan,* 27 Barb. 376 ; *Blissert* v. *Daniel,* 10 Hare, 493 ; *Wood* v. *Wood,* L. R. [9 Ex.] 190 ; *Patterson* v. *Silliman,* 28 Penn. St. 304 ; Lindly on Part. 744, 446 ; *Faithorne* v. *Weston,* 31 Hare, 387 ; *Barton's Case,* 4 DeG. & J. 46.) A court of equity has jurisdiction and power to afford all relief consistent with the facts in the case. The complaint invokes relief of an equitable nature only, and the full relief that the court has prerogative to dispense. (*White* v. *Brownell,* 4 Abb. Pr. [U. S.] 162, 191 ; Collyer on Part. § 53 ; *Beaumont* v. *Meredith,* 3 V. & B. 180 ; *Richardson* v. *Hastings,* 20 Eng. Ch. 323 ; *Bury* v. *Cross,* 3 Sandf. 1 ; *Gorman* v. *Russell,* 14 Cal. 531 ; *Bailey* v. *Burton,* 8 Wend. 339 ; *Brown* v. *McDonald,* 1 Hill, 302 ; *Linegan* v. *Henderson,* 1 Bland, 251 ; *Smith* v. *Smith,* 4 And. 495.)

*Wm. G. Tracy* for respondents. The only contract with the plaintiff is the one contained in the covenants of 1864 and 1875. Those contracts are lawful, and contained the terms of the agreement under which the association was organized and carried on. If they do not furnish a basis for this action then there is none. (*Waite* v. *Merrill,* 4 Me. 102.) By the terms of the agreements of 1864 and 1875, the plaintiff acquired no

divisible interest in the property of the Oneida Community, but only a right to its use while he remained a member. (*Gasely* v. *Separists*, 13 Ohio St. 144 ; *Goesele* v. *Bimeler*, 14 How. [U. S.] 589 ; *Waite* v. *Merrill*, 4 Me. 102 ; *Schreiber* v. *Rapy*, 5 Watts, 351 ; *Potter* v. *Chapin*, 6 Paige, 639, 650 ; Boone on Corp. § 322 ; *McMahon* v. *Rauher*, 46 N. Y. 67 ; *Leech* v. *Harris*, 2 Brewst. Pa. 571 ; *Ebbenghousen* v. *W. Club*, 4 Abb. [N. C.] 300 ; *Hyde* v. *Woods*, 2 Saw. 655, 659 ; 94 U. S. 523 ; *Belton* v. *Hatch*, 109 N. Y. 593 ; *Ash* v. *Giue*, 97 Penn. St. 493 ; *Lafond* v. *Deems*, 81 N. Y. 507 ; *Loubat* v. *LeRoy*, 15 Abb. [N. C.] 44 ; *Caldicott* v. *Griffith*, 8 Exq. 898.) The plaintiff withdrew from the community without cause while it was a living organization, and his rights were by that act extinguished. (*Goesele* v. *Bimeler*, 14 How. [U.S.] 589.) Burt was properly expelled for cause. (*Otto* v. *J. Union*, 75 Cal. 308.) The contract entered into between the plaintiff and the Erie Preserving Company, and his subsequent acts, constitute a bar to equitable relief. (*Murray* v. *Beard*, 102 N. Y. 508 ; *N. Y. C. Ins. Co.* v. *Nat. Prot.*, 14 id. 85 ; *Gazley* v. *Pine*, 16 Johns. 267 ; *Goesele* v. *Bimeler*, 14 Hun, 589 ; *News* v. *Yocum*, 9 Sawy. 24.) The complaint was, in fact, dismissed " upon the merits," although the referee omitted the words " upon the merits " from his report. (*Van Derlip* v. *Keyser*, 68 N. Y. 444 ; *C. Bank* v. *Gospel Church*, 127 id. 361 ; *O'Rourke* v. *Hadcock*, 114 id. 551, 555.) The transfers of property by the property holders to the Oneida Community (Limited) were not fraudulent or void. (*Leggett* v. *Ladd*, 17 Ore. 89 ; *Fairchild* v. *Fairchild*, 64 N. Y. 471 ; *Macom* v. *Macom*, 53 id. 607.) If the conveyance to the Oneida Community (Limited) was illegal or void, the plaintiff is not entitled to any relief in this action. (*Holland* v. *Alcock*, 103 N. Y. 323.) No trust existed in regard to the real estate, and the four held absolute title thereto. (*Carr* v. *Carr*, 52 N. Y. 251 ; *Reitz* v. *Reitz*, 80 id. 538 ; *Levy* v. *Brush*, 45 id. 589.)

MAYNARD, J. The plaintiff's grievance consists of the denial by the defendants of certain rights, which, he claims,

he was entitled to as a member of the Oneida Community, an unincorporated association, first formed at Oneida in this state in the year 1848. His father was one of its founders, and the plaintiff, who was then four years of age, became provisionally a member of the community during his minority. Upon attaining his majority he formally assented to its article of covenant, and remained in its communion until the year 1880, when the controversy arose between him and his associates, which culminated in the commencement of this action January 12, 1884. It is not important to consider here the moral and religious teachings of the community, which were manifestly potent influences during the formative period of its existence. What principally concerns us now was its status as a business compact, and we must stop, when we have construed the contract relation of the parties and determined the rights acquired by virtue of a membership therein.

In this aspect the main purpose of its promoters was evidently the propagandism of certain communistic views as to the acquisition and enjoyment of property, and the endeavor to put into practical operation an economic and industrial scheme which should embody and illustrate the doctrines which they held and inculcated. Necessarily the basic proposition of such a community was the absolute and complete surrender of the separate and individual rights of property of the persons entering it; the abandonment of all purely selfish pursuits, and the investiture of the title to their property and the fruits of their industry in the common body, from which they could not afterwards be severed or withdrawn except by unanimous consent. It was fashioned according to the pentecostal ideal, that all who believed should be together and have all things common. It was intended to be in fact, as they frequently styled themselves, but a single family upon a large scale with only one purse, where self was to be abjured and the general good alone considered. These objects and purposes were outlined in a certain article of agreement or covenant which the adult members, including the plaintiff, signed, and upon the proper construction of which the rights of the

plaintiff must depend. While only general and comprehensive terms were employed, we think it is not difficult to discover the true intent and meaning of its provisions. The property of each subscriber immediately became an inseparable part of the community's capital, and, while no one was compelled to toil, yet labor was enjoined as a religious duty, and the earnings of all were mingled in the common treasury. Every member was at liberty to withdraw at any time upon his own motion, but he could not take with him or demand as a right any share of the joint property; all must be left intact for the use and enjoyment of those who remained loyal to the purposes of the organization. An account was kept of the property contributed by a member upon his admission, and if he withdrew it was the practice to refund it or its equivalent in value without interest or increase. This was not regarded in the light of an obligation, but as a matter of good will and liberality, and the time and manner of refunding rested in the discretion of the community, through the voice of its members, who might discontinue the custom at any time or refuse to refund in any case. No account was to be rendered of the services of members, but the education, subsistence, clothing and other necessaries of life furnished them and their children were to be received as just equivalents for all their labor and services, and no claim for wages was to be made by any withdrawing member. There was a mutual stipulation that no member or his heirs, executors, administrators or assigns would ever bring any action, either at law or in equity, or other process or proceeding for wages or other compensation for services, nor for the recovery of any property contributed at any time, or make any claim or demand therefor of any kind or nature whatsoever.

These were the main features of the organization to which the plaintiff voluntarily became a party. It is not shown or found that he was induced to enroll himself among its members by any fraud or duress; and, viewing it solely as a business undertaking, it was not prohibited by any statute or in contravention of any law regulating the possession, ownership

or tenure of property. It imposed no unlawful restraint upon the alienation of property, for the title to its real estate could be conveyed at any time by the united action of its members if they so willed it. It was a joint holding of property by the adult members of the community with this qualification, that upon the death or withdrawal of a member no share or interest therein passed to him or his personal representatives, but they who survived or remained continued to hold jointly the entire property *in solidum.* (*Goesele* v. *Bimeler*, 14 How. U. S. Rep. 589; *Same Case*, 5 McLean, 223; *Gasely* v. *Separatists Soc.*, 13 Ohio St. R. 144; *Waite* v. *Merrill*, 4 Maine, 102; *Schriber* v. *Rapp*, 5 Watts, 351; *Gass* v. *Wilhite*, 2 Dana [Ky.], 170.)

If any hardship resulted from this absorption of individual rights in the common mass, it afforded no sufficient grounds for legal complaint, for it was so explicitly named in the bond into which all had freely entered, and without which the distinctive characteristics of the association would be wanting.

The title to the real property was held in the name of certain individual members, mainly from reasons of convenience. Whether a trust was thereby created, and if so, what were its limitations and objects, we need not inquire. The property so held was concededly the property of the community. It had originally belonged to the persons who owned it at the time of their admission, or it had been purchased with the common funds. The persons who were thus seized of the legal title were also members. Whatever they owned or held vested by virtue of their membership in the community, who had at least the equitable title and the ultimate right of control. The situation was not different from a case where the legal title to the real property of a partnership is held by one partner. It remains, nevertheless, firm property, and must be so applied and disposed of.

We cannot find that there was any express requirement of residence at Oneida as an essential condition of continued membership. Residence elsewhere was at least permissible, but it was the primary obligation of every member, wherever

he might be or in whatever employment engaged, to account to the association for his earnings and the profits of his business.

The plaintiff contributed nothing in money or other property to the capital of the community.   He was educated at its expense at the scientific school of Yale College, and from 1865, when he became of age, until 1879, he seems to have devoted himself, except when under tuition, faithfully and diligently to the work and cause of the community, and to have fully discharged his obligations and duties as one of its members. During the latter part of this period dissensions arose in the community, apparently on account of some of its anomalous social practices.   Many advocated reforms, which were stoutly resisted by others, and a prolonged and acrimonious discussion followed in which the plaintiff was an active and earnest participant.   Undoubtedly his mode of life there became burdensome and distasteful, and in the fore part of the year 1880, he decided to leave the community and enter the employment of the Erie Preserving company, a rival in the manufacture and sale of canned goods, as a traveling salesman in the northwest, with headquarters at Chicago.   He entered into a contract to serve the company in that capacity for six months, with the option to continue for six months longer.   He had previously been a traveling salesman for the community, and in the contract with the Erie company, it was stipulated that he might first offer the goods of the former for sale ; but it appears that the customers of the Erie company were not customers of the community, and not likely to buy its goods, if offered.   This agreement to enter the service of another company was made, in the first instance, without the knowledge or assent of the community.   It was, we think, a breach of the plaintiff's obligations to the association of which he was a member, and was also an indication of a contemplated severance of his relations with it.   When we consider the peculiar character of the community organization and its underlying principles, it must be conceded that no member had reserved the right to enter upon an independent and, to some extent, a competing business enterprise, and at the same time insist upon retaining his

privileges as a member and an equal voice in the management of its affairs. Neither the originators of this unique scheme of social development, or those who from time to time had entered into covenant relation with them, had ever admitted the existence of such an element of disintegration. Such conduct on the part of a member was allowable upon obtaining the consent of the community family, and not otherwise. After this contract had been made, the plaintiff informed the administrative council that he had entered into it and proposed to carry it out. In making this announcement he stated, as a reason for his action, that he wished to make a comfortable place for himself and friends outside of the community. The council unanimously disapproved of his course, and informed him that it was unauthorized and that by its adoption he had placed himself outside the community; but they finally consented that he might make a trial trip and if, upon its termination, the community disapproved of his continuance in the service of another company, he should abandon his contract, to which he assented. This occurred on April 21, 1880.

We think it is clear that the council had no authority to make this arrangement; that the consent required could only be lawfully given by the community itself in a family meeting, as it was called, which all the adult members had the privilege of attending and of voting upon all propositions submitted to it. But the inference can be justly drawn that this action of the council was made known to the community and acquiesced in by its members, and it must, therefore, be held that the plaintiff was authorized to make a trial trip in the interest of the Erie company under his contract with it and to that extent the plaintiff's previous unauthorized action was approved and ratified by them. The plaintiff returned from the trial trip in the month of July, 1880, and wrote a letter to the administrative council, dated the twenty-sixth, in which he stated, in substance, that on the next Wednesday he proposed to change his place of residence to Chicago; that he did not look upon the change as a complete withdrawal from

the community; but expected the privilege of returning at
any time, when the circumstances should be such that he could
enjoy a peaceful, happy home there; that he considered the
move he was about to make in the light of self-protection;
that his health and happiness demanded that he should not be
continually surrounded by the circumstances he was in there;
that he was never "cut out for a prize fighter," and did not
find enjoyment in that school; that he did not expect to make
any settlement on leaving; that he proposed to take with him
the money he had earned in the service of another company,
on the ground that there was considerable doubt in the minds
of many whether he was then, or had been for two months
past a member of the community on account of his outside
connections; that several persons in the council had expressed
this opinion and it was held by many others; that if this view
was true the community certainly was not entitled to receive
the earnings of an alien; that as long as there was any doubt
upon the subject he should take the benefit of the doubt;
that feeling as he did if the community succeeded in adjust-
ing the conditions of things there so that he could return, he
should do so, and when he did return he should bring all his
earnings.

A meeting of the administrative council was held the
same day at which this letter was read and a committee
was appointed to confer with the plaintiff, who reported at
another meeting, held July thirtieth, that the plaintiff had
fully determined to leave the community and enter into a per-
manent engagement with another party on his own account.
A preamble was then adopted reciting that the plaintiff had
of his own accord and without the consent of the community
entered the service of another company for his own individual
interest and profit, followed by a resolution "that he had, by
this act, severed his connection with the community and can
no longer be recognized as one of its members." This resolu-
tion was reported to the business board August first and
adopted by that board. It was then referred to the family
meeting held Sunday, August eighth, and the action of the

administrative council and business board was unanimously confirmed.

The secretary of the council by its direction transmitted a copy of the resolution to plaintiff, who replied at some length under date of September fourth, in which he reiterated the statement that he still considered himself entitled to all the rights and privileges of membership in the community; that they all knew under what circumstances he left home; that he left stating distinctly that he did not consider it a separation of interests, but a temporary withdrawal until a satisfactory adjustment of affairs could be obtained, in which it would be safe for him to live there, and he requested that the matter be laid before the proper body with the assurance that he should not relinquish, in the slightest manner, his rights as a member, and in case of division to his portion of the property; that if he discovered the least hesitation to acknowledge his rights he should at once take steps to put them to a practical test; that he was in receipt of a fair income then, and all of it would be expended if necessary in establishing his rights, and closed with the intimation that if the matter ever came into court the bottom facts would be made known. Immediately after the letter of July twenty-sixth was written, the plaintiff left the community, went to Chicago, opened an office there, as agent of the Erie Preserving Company, put out a sign to that effect and, during the remainder of the year, was in the service of that company, or working upon his own account, and he rendered no service for or on behalf of the community. His net earnings down to February, 1881, amounting to $1,400, were retained by him and appropriated to his own use. It is true, they were at first deposited with the treasurer but not to the credit of the community, but to the plaintiff's individual credit and they were subsequently drawn out by him.

Accepting the plaintiff's version of his conduct and declarations, we think it must be held that he renounced his obligations as a member of the community and severed his conventional relations with it. It cannot aid him that he attempted

to reserve to himself the privilege of returning and resuming his membership. The constitution of the community did not admit of the exercise of such an option. He could not withdraw when, in his judgment, such a course would be profitable and assert the right to come back and be received into the fellowship of the asssociation when it suited his pleasure or convenience, or self-interest to do it. The community had not made a unilateral bargain of that kind with him. He had not so far surrendered his freedom of action that he might not go out at any time without notice and without their assent; but in so doing he terminated his right to share in the enjoyment of the use and possession of the property of the concern. It is not correct to say that by his withdrawal from membership he forfeited his interest in the lands and chattels of the community. He forfeited nothing. The contingency or event upon which the existence of his estate in the property depended had happened. By the terms of the contract, under which that estate was acquired, its duration was only co-existent with the duration of his membership.

There is some conflict as to the length of the plaintiff's trial trip. He insists that it was intended to cover the six months' service contracted to be rendered the Erie company, which would not have expired until November twentieth, and that meanwhile the community could take no action in the premises. The members of the administrative council state that it was their understanding that the trial trip would end in two months, and that it terminated upon plaintiff's return to the community about July twentieth. Had the plaintiff rested upon the consent given by the council to make the trial trip, this issue of fact would have become important. But the license given him was terminated by his own act of withdrawal evidenced by the letter of July twenty-sixth. He chose then to take the decisive step, which placed him upon the footing of a stranger to the community; and it is not material to inquire whether he might not have continued to avail himself of the permission of the council to serve another company for a longer period. He is bound by the election which he then made.

The plaintiff contends that by a custom, which had acquired the force of an obligation, a withdrawing member was accorded the privilege of returning and resuming his relations with the community, and an agreement made with one Inslee was introduced in evidence as an illustration of the practice in this respect. But this paper does not assume that the outgoing member is entitled to a re-instatement because of his former membership. It expressly negatives any such inference. It recites that Inslee had withdrawn because of differences of opinion, that in consideration of $100 paid he agrees to receive the same in full payment and settlement of all claims, demands, debts and damages; but declares that the settlement is made and accepted on the ground of liberality and good will, and that they will receive the withdrawing member again in case he shall become reconciled and prepared to live in unity and subordination in the community. This instrument is not a recognition, but a disclaimer of any right on the part of the retiring member to payment out of the common fund, and a reiteration of the stipulation in the article of covenant, that whatever may be allowed to such a member would be a matter of favor, and not enforceable as a vested right. But the plaintiff is estopped from making any claim to the customary settlement. In his letter of withdrawal, July twenty-sixth, he plainly states that he does not expect to make any settlement on leaving. He declines to recognize the established practice with reference to an outgoing member, or to submit himself to its application. His subsequent conduct is in accord with his declaration in the letter. He never requested or demanded a settlement. The community is, therefore, not in default, and has not refused him any privilege granted to other members under similar circumstances.

In fact, the plaintiff has staked his case entirely upon the plea that he was illegally and unjustly expelled from membership. If that were established, he would, confessedly, have a good cause of action against the wrongdoers. But there is no proof in the record of an expulsion. The only

action of the community, or of its representatives, upon the subject of plaintiff's membership, is contained in the resolution first adopted by the administrative council, July thirtieth, which recites the action of the plaintiff, and concludes with a resolution that he has, by such action, severed his connection with the community, and can no longer be recognized as one of its members. The community took no affirmative proceedings. This resolution was nothing more than a declaration of the interpretation which they placed upon the plaintiff's conduct, and, as we have seen, it was an entirely correct construction of the legal effect of his own acts. Its adoption was not necessary to consummate the withdrawal of the plaintiff. Its chief importance is in its relation to the conditions which he attempted to attach to his withdrawal. It was an emphatic announcement by the community, that they did not acquiesce in his reservation of a right to retract his withdrawal at pleasure, and resume his membership; an acquiescence which might have been presumed had the community remained silent. It is true, that the referee in his findings has characterized this resolution as one of expulsion; but that does not change its legal aspect. The facts in regard to it are undisputed. He has also found that the plaintiff absented himself from the community, and omitted to perform, or attempt to perform, his contract with it, and entered into a contract with outside parties to serve them instead of it, and performed his contract with them; and that the same was inconsistent with his obligations to the community, according to the terms of his contract with it. This was, in legal effect, a finding that he had, of his own volition, withdrawn from the fold of the community and severed his contractual relations with it, and assumed an attitude towards it which debarred him, both at law and in equity, from further recognition as one of its members.

It appears from the record that on October 16, 1880, a preliminary certificate for the incorporation of the defendant, the Oneida Community, limited, under the business company's act of 1875 (chapter 611), was executed by nine

members of the community, including the property holders who held the deeds of its real property, and filed in the secretary of state's office. The objects of the proposed corporation were to carry on a general manufacturing and agricultural business, including all the different kinds of business in which the community was then engaged. The capital stock was $600,000, which fairly represented the net value of its property, and the location of its principal business office was at the home of the community in Madison county. The secretary of state issued to the proposed incorporators the license required by law. Books of subscription to its stock were opened, and such proceedings had that the entire capital was subscribed by the adult members of the community, about two hundred in number, in varying amounts, and the final certificate of incorporation filed November 20, 1880. On or before January 1, 1881, all the property of the former community belonging to it and held by its property holders was transferred to the corporation, and since that time has been owned and used by the corporation, which has carried on the different kinds of business theretofore undertaken by the unincorporated association, which has not, since January 1, 1881, been engaged in any business, and, so far as appears from the record, has not undertaken to discharge any of the obligations in its covenant with its members.

The plaintiff insists that the association to which he belonged has thus committed an act of self-destruction, and has become dissolved, and he is, therefore, entitled to have its assets equitably administered and distributed, and to receive his proportionate share thereof. It may be that the old community has, by the act of its members, been dissolved. The referee held otherwise; the General Term refrained from expressing an opinion upon the point, and we do not consider it a material question upon this appeal. If it were sound as a proposition of law it would not help plaintiff. He had ceased to be a member of the community before this action was taken, and his property rights were not prejudiced by it.

We think the General Term placed the correct construction

upon the disposition made by the referee of the motion for a nonsuit. What was subsequently done was equivalent to a denial of the motion, or, in any view, to a waiver of a decision upon it. The parties proceeded to a trial of the merits of the issues framed by the pleadings. Findings of fact and of law were proposed by both parties and passed upon by the referee. There was no specific request made by either party for a ruling upon the motion. As the plaintiff resisted the motion, he cannot ask to be placed in a better position than he would have been if it had been formally denied. ( *Van Derlip* v. *Keyser*, 68 N. Y. 444.)

We have carefully considered the exceptions taken by the plaintiff in the course of the trial, and fail to discover any prejudicial error in the rulings to which they relate. We think that upon his own proofs he failed to establish any ground for the equitable interference of the court.

The judgment and order must be affirmed, with costs.

All concur.

Judgment affirmed.