BENZIGER et al. v. STEINHAUSER.

(Circuit Court, S. D. New York. June 1, 1907.)

1. INJUNCTION—ACTIONS AT LAW—EQUITY.

Intestate, a Catholic priest, joined the order of St. Benedict, a New Jersey charitable corporation authorized to take and hold real and personal property, and as a part of his membership vows agreed to deliver to the corporation all his property and earnings in consideration of such membership and his support and maintenance. He also agreed to execute any necessary transfers to perfect the title of the corporation. During his membership he wrote and copyrighted certain books which were sold by complainants for him under a royalty. All of the royalties which accrued during his life were paid to the society, but no assignment of the royalties was ever made, whereupon suit was brought by his administrator against complainants to compel a second payment thereof. Intestate left no debts, but nephews and nieces surviving him. He remained a member of the order until his death, and received his support and maintenance therefrom. *Held*, that a bill alleging such facts sufficiently disclosed that the corporation was the equitable owner of the royalties, and that complainants were entitled to an injunction restraining the action at law until the equitable rights of the society had been established.

2. SAME—LACHES.

No demand ever having been made on complainants for a second payment of such royalties until that made by the administrator shortly before his action was brought, complainants were not barred from relief by their laches in having failed to have previously compelled the society to establish its right to the royalties which were claimed by the administrator since 1901.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, §§ 198–201.]

Demurrer to Bill of Complaint in Equity. The real ground of the demurrer is that there is a want of equity in complainants on their own showing. No facts stated which entitle them to the relief demanded or to any relief.

Arnold & Greene, for complainants.

Charles L. Burr, for defendant.

RAY, District Judge. With all necessary particularity and detail the complainants set forth the following facts:

(1) Complainants, booksellers, etc., are citizens and residents of the state of New York. Defendant, as administrator of one Augustin Wirth, is a citizen and resident of the state of Minnesota, where the intestate died and of which state he was a citizen, and where administration of his estate was granted and is pending, and the amount in controversy is upwards of $2,000. Ancillary letters of administration were granted to defendant in the state of New York.

(2) The intestate, Wirth, in his lifetime was the author of certain books for which he obtained copyrights, and he never made any formal written assignment thereof.

(3) About 1897 Wirth entered into a written contract with the complainants, by the terms of which they were to print and bind and sell certain of said copyrighted books, etc., and at a certain time have certain interests therein, and were to pay to Wirth certain sums of money from time to time for such rights and interests. The agreement was in

force when Wirth died, December 19, 1901. At that time there was due on said contract $175.40, and this sum January 25, 1902, complainants paid to the Order of St. Benedict of the state of New Jersey, a religious corporation existing by and under the laws of said state. The complainants continued to print and sell the said copyrigted books under the terms of said contract,. and to pay the sums due thereon to said corporation down to October 17, 1906.

(4) The complainants contend that the said corporation is the equitable owner of said copyrights and of said contract and of the moneys accruing due thereunder, and said order or corporation claims to be such owner.

(5) October 17, 1906, the defendant, as such administrator of Wirth, commenced an action at law in the Circuit Court of the Southern District of New York against complainants to recover of them said sums of money accruing due under said contract, contending, of course, that Wirth owned said copyrights and such contract, and that they are a part of his estate, as are the moneys accruing due thereon as stated. That action is pending.

(6) Complainants allege they cannot plead and show the equitable title of said corporation to said copyrights contract and money in said action at law as a defense, and seek to have it decreed that such corporation is the equitable owner thereof and entitled thereto, 'and also to enjoin the further prosecution of the action at law.

(7) The facts pleaded to show such equitable title are as follows: Said Augustin Wirth was a Catholic priest and a member of said corporation known as the Order of St. Benedict, and was 76 years of age at his death. The purpose of the members was to live in community, apart from the world in monastic life, and devote themselves to charitable and educational purposes. To become a member it was necessary to take the vows of chastity, poverty, and obedience. The complaint alleges:

"The significance of the vow of poverty was the giving up of all right of possession of temporal goods and the transfer of all property to the community of members, and the taking of the vow was always accompanied by an actual transfer by the member to the society of all temporal goods which he then possessed and by an agreement that he should henceforth assign to it whatever he might acquire."

One of the rules of the order contained the following:

"The vice of personal ownership must above all things be cut off in the monastery by the very root, so that no one may presume to give or receive anything without the command of the Abbot; nor to have anything whatever as his own, neither a book, nor a writing tablet, nor a pen, nor anything else whatsoever; since monks are allowed to have neither their bodies nor their will in their own power. Everything that is necessary, however, they must look for from the father of the monastery; and let it not be allowed for any one to have anything which the Abbot did not give or permit him to have. Let all things be common to all, as it is written. And let no one call or take to himself anything as his own. But if any one should be found to indulge this most baneful vice, and having been admonished once and again, doth not amend, let him be subjected to punishment."

The vow of poverty was:

"In the Name of Our Lord Jesus Christ, Amen! I, Brother Augustine Wirth, a Bavarian of the diocese of Wuerzburg, to the honor of Almighty God, of

the ever Blessed Virgin Mary, and our Holy Father St. Benedict, and of all the Saints, by these present vows promise stability and the conversion of my morals, and obedience according to the Rule of the same holy Father St. Benedict, in the presence of God and His Saints, whose relics are here present in the church, and also in the presence of the Right Reverend Father in Christ and Lord Boniface, the Superior of this Monastery of St. Vincent's and of you Rev. Fathers and Brothers here present; in the name of the Father, and of the Son and of the Holy Ghost, Amen.

"In Witness Whereof I have written with my own hand this present paper in this venerable place of St. Vincent, in the year one thousand eight hundred and fifty two from the Incarnation of Our Lord, on the feast of the Assumption of the Bl. Virgin Mary, the fifteenth day of August.

"[Sign of the Cross.]"

By the act of incorporation the Benedictine Society could take and hold property real and personal. All members of the Benedictine Order in the United States were ipso facto admitted as members. If a member voluntarily gave up his membership, he was to receive nothing. If the society was suppressed or dissolved, then the property was to be equally divided amongst the members. By the constitution of the corporation it was provided, amongst other things:

"Since the Order of St. Benedict of New Jersey is solely a charitable institution, the real estate of said order and the individual earnings of its members, are and must be considered as common property of the Order of St. Benedict of New Jersey from which the members of said Order derive their support and the balance of which income and property should serve for the following up and carrying out the charitable objects of the Order."

Also the following:

"It is therefore agreed upon by all the members of the said Order of St. Benedict of New Jersey that no member can or will claim at any time or under any circumstances more than their decent support for the time for which they are members of the Charter of the Order of St. Benedict of New Jersey, and no further.

"And, moreover, that each member individually pledges himself to have all property, which he now holds or hereafter may hold, in his own name conveyed as soon as possible, to the legal title of the Order of St. Benedict of New Jersey."

The complaint alleges that Wirth left no debts, but nephews and nieces him surviving; that he remained a member of said order until his death, and received his support and maintenance from said order and society; that he was assisted by the members of the order in the publication, sale, and delivery of such books; that by special permission of the order Wirth was at times relieved of his educational, charitable, and religious work that the publication and sale of the books might be conducted with greater profit to the said order; that Wirth during his lifetime accounted to the said order for all moneys received by him under said contract; that Wirth died without having executed any formal transfer of such copyrights or contract to the corporation.

It seems to me that a general summary would be that Wirth, having joined this order, having become a member of the corporation, agreed to surrender and deliver to it, it being empowered to take, all his property, real and personal, and all his earnings, in consideration of the benefits of such membership and of his support and maintenance; that he also agreed to make and execute any necessary transfers to perfect

the title of the corporation; that these copyrights and this contract and the moneys received under it were regarded and treated as the property of said corporation; that Wirth accepted and received the benefits and consideration mentioned, but died without having executed a formal transfer and assignment. Without deciding what the decision may be with all the facts in evidence and before the court, it seems to me that the complaint states a cause of action in equity—shows equitable title in the corporation. The order or society was legally incorporated. Its objects and purposes were legal and commendable as a whole. The intestate was an active member and subscribed to the vows quoted. He actually dedicated his property rights to the uses of the society, and they were treated as belonging to it. He had the consideration for the transfer which he agreed to make when necessary by adequate writings. This is the effect of the allegations of the complaint. In view of the pending suit at law by the defendant, complainants have the right to have this question passed upon as between the parties hereto. The following cases seem to sustain the rights of the corporation to the property and money in question: Goesele et al. v. Bimeler et al., 14 How. (U. S.) 589, 14 L. Ed. 554; Schriber v. Rapp, 5 Watts (Pa.) 351, 30 Am. Dec. 327; Waite v. Merrill, 4 Greenl. (Me.) 102, 16 Am. Dec. 238; Gass v. Wilhite, 2 Dana (Ky.) 170, 26 Am. Dec. 446; Burt v. Oneida Community, 137 N. Y. 346, 33 N. E. 307, 19 L. R. A. 297; Gasely v. Separatists, 13 Ohio St. 144; Schwartz v. Duss (C. C.) 93 Fed. 528, and 103 Fed. 567, 43 C. C. A. 323; and Schwartz v. Duss, 187 U. S. 8, 23 Sup. Ct. 4, 47 L. Ed. 53.

No laches appears on the face of the complaint. The complainants here have treated the copyrights and contract and moneys growing due thereunder as the property of the corporation until sued at law by the administrators of said Wirth for the money they have been paying to it since 1901. This suit is now made necessary to the complainants as a defense and protection against double payment. If it shall be found that the corporation is the equitable owner of the copyrights and contract, equity may so declare, and even compel a formal transfer. Lawrence v. Dana, 15 Fed. Cas. 26; Little v. Gould; 2 Blatchf. 165, Fed. Cas. No. 8,394; Pulte v. Derby, 5 McLean, 328, Fed. Cas. No. 11,465. It is a familiar rule in equity that that will be regarded as done which ought to be done. Many times the equitable owner is treated as the actual legal owner.

The demurrer is overruled, with costs, but defendant may have 60 days in which to answer after being served with a copy of the order to be entered pursuant hereto.