[No. 10768. Department Two. May 14, 1913.]

OSCAR ENGVALL, *Respondent*, v. JOHN BUCHIE *et al.*,
*Appellants.*[1]

ASSOCIATIONS — MEMBERS — WITHDRAWAL — LIABILITY FOR DEBTS.
Members withdrawing from a voluntary association are not, as be-
tween themselves and the other members, liable for outstanding
debts of the association, where the articles of association gave them
the absolute right to withdraw without other condition than thirty
days' notice, and neither the articles nor by-laws reserved any lia-
bility for outstanding debts, since the liability depends on the terms
of the contract.

SAME—LIABILITY FOR DEBTS—CONTRIBUTION. Members of a volun-
tary association are liable as partners for contribution for the pay-
ment of debts discharged by one of their number, in the absence of
anything to the contrary in the compact of association.

SAME—CLAIMS OF MEMBERS — ASSOCIATION TRIBUNALS—EXHAUST-
ING REMEDIES. Where a member of a voluntary association sub-
mitted his claim to the board of directors, in the manner required
by the only by-law providing a tribunal to pass upon claims, which
board audited and approved the claim, he thereby exhausted the
remedies provided within the association and could sue for an ac-
counting.

ARBITRATION AND AWARD—ABANDONMENT. An arbitration of mat-
ters between members of an association is mutually abandoned,
where it was made with the understanding that it should meet with
the approval of all of the members, and several of the directors
and many of the members failed to sign it.

ASSOCIATIONS—INSOLVENCY—ACCOUNTING—CLAIMS — DISTRIBUTION
OF ASSETS. In an action for a dissolution of a voluntary association
and an accounting, in which all the members were parties, it is in-
cumbent on members to make proof of their claims, and the decree
need not provide for claims not asserted and proven after opportu-
nity to do so.

SAME—MEMBERS—PURCHASE OF CLAIMS—CONTRIBUTION—COSTS. A
member of an insolvent voluntary association cannot purchase claims
against it, in the name of a third person as trustee, and prosecute
an action at law thereon; and upon accounting and contribution, his
associates are not liable for the costs and expenses of the suit or
for the sum bid at execution sale, nor for any more than he paid out
in the actual purchase of the claims.

[1]Reported in 132 Pac. 231.

SAME—INSOLVENCY—ASSETS—DISTRIBUTION. Where the members of a voluntary association made advances to pay debts of the association, the one was liable to the other for contribution for any excess of the claim of the other, and the first application of the assets should be made to equalize the claims, before they should be allowed to participate in an equal division of the remaining assets.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered January 3, 1912, in favor of the plaintiff, after a trial on the merits before the court, in an action for an accounting. Affirmed.

*H. W. Lueders*, for appellants.

*Huffer, Hayden & Hamilton*, for respondent.

ELLIS, J.—The plaintiff, who was a member and an officer of the Home Grocery Company, a voluntary business association, brought this action against his co-members for the purpose of establishing a claim of $1,050, on account of money loaned and advanced by him to pay the debts of the association. The complaint prayed that the association be dissolved, its property sold, and the proceeds applied in payment of its indebtedness; that an accounting be had; that the plaintiff have judgment against the defendants, and each of them, for the amount due him, with interest; that, if any surplus remain after the payment of all debts, it be distributed among the members *pro rata;* that a receiver be appointed to wind up the affairs of the association; and for general relief.

The evidence fairly established the following facts: That the association was organized for the purpose of operating a co-operative grocery and general merchandise store at what is known as Home Colony, in Pierce county. No capital stock was issued, the only provision for a working capital being membership fees and deposits. The articles of agreement provided for a membership fee of $100, which would entitle each person paying the same to full membership, and for a depositor's fee of $5. Both members and depositors participated in the profits of the concern in proportion to

their purchases at the store. It was provided that any member might withdraw from membership upon 30 days' notice, and on such withdrawal, his membership fee should be returned to him. The elective officers of the company consisted of a board of three directors, a clerk-manager, and secretary treasurer, five in all. The members of the association elected all of these officers, and, by a majority vote, had the power to direct the policy of the association. The depositors had no vote and no voice in its management. The by-laws of the association provided:

"The duties of the board of directors are and shall be, (1) to have general control of the business carried on by the company. . . . (3) To hold a regular board meeting once a month to act on all grievances and complaints, to consider and determine the merits and justness of the same. (4) To elect a president and auditor of their own number."

The by-laws further provided that:

"It shall be the duty of the auditor at the close of each six months to audit the books and invoices of the company, make a report of the purchases, bills paid, membership and expenses, and bring the same before the board of directors."

and that: "the business manager and three directors shall take an inventory of the company's goods and property every six months." The plaintiff was clerk and business manager from June, 1907, until April 19, 1911. The evidence shows that between June 11, 1907, and April 16, 1910, he advanced various sums from time to time for the payment of the debts of the association, due for goods purchased by it in the course of its business, these sums aggregating $1,050; that the directors and officers of the association all knew of these advances; that the auditor audited and allowed them as debts against the association; that the directors approved his report; and that the various members of the association had full knowledge of these advances. In the months of January, February, March and April, 1910, some thirty-one members of the association withdrew therefrom, each receiving a re-

payment of his membership fee of $100, in accordance with the articles of association. The plaintiff commenced this action in March, 1911, and while the action was pending, the Tacoma Association of Credit Men, a corporation to which had been assigned various claims against the association for money due for goods purchased, on May 12, 1911, commenced an action against the association and all of its members, including the plaintiff, to collect these claims, amounting to $805. Certain efforts were made by some of the members of the association to raise money with which to take care of this indebtedness, but without success. Finally, the defendant Nathan Levin borrowed $800 and, through his attorney, purchased the claims of the Tacoma Association of Credit Men for $700; taking assignments thereof in the name of one Ernst Hoppe, paying the attorney for the defendants in the present action, through whom the purchase was negotiated, $100. He then, through the same attorney, prosecuted the action which had been commenced by the Tacoma Association of Credit Men in the name of that association to judgment, and on the 31st day of August, 1911, all of the property and assets of the association were sold on execution thereunder, and were bid in by Hoppe as trustee, it is now claimed, for Levin, for the sum of $925, which was about the amount of the judgment and costs. Meanwhile, this action was prosecuted to trial. The court made no findings of fact, but on the 3d day of January, 1912, entered a decree that the association be dissolved, that its property be sold and the proceeds be applied in payment of its indebtedness, and the affairs of the association be wound up; that there is due to the plaintiff from all of the members of the association the sum of $1,050, with interest from July 1, 1910; that there is due to the defendant Nathan Levin from the members of the association the sum of $700, with interest from July 1, 1911. It was ordered that a receiver be appointed; that he make a report to the court; that thereafter he sell all of the property of the association at public auction for cash, after

giving notice; that all outstanding debts owing to creditors other than members of the association and the charges and expenses of the receiver be first paid from the proceeds of the sale; that if any balance remain, it be divided between the plaintiff and the defendant Levin, by first paying to the plaintiff the difference between the amount due to him and the amount due to Levin, and thereafter dividing the balance equally between the plaintiff and the defendant Levin until their respective claims be fully paid; and if any money remain, it be divided equally among the members of the association.

It was further decreed that all of the members of the association are indebted to the plaintiff and to the defendant Levin for any balance remaining due to them respectively, after applying the proceeds of the sale to the indebtedness of the association as above specified; that the defendant Levin recover judgment against each of the defendants and the plaintiff for an amount equal to one-twentieth of any such balance remaining due to the defendant Levin; and that the plaintiff have judgment against each of the defendants for an amount equal to one-twentieth of any sum remaining due to him, less one-twentieth thereof. It was also ordered that the decree be kept open to await such further orders and directions as might be required or be necessary in the premises. The defendants Buchie, Hampie, Gross, Robinson, Burton and wife, Levin, Fox, Cuisinier, Ostroff, Hawkes, Hansen, Rivers and Lanning have appealed.

The appellants first contend that the trial court erred in refusing to require the plaintiff to make the thirty-one members who had withdrawn from the association parties defendants, to the end that they be required to contribute as partners to the payment of his claim, part of which originated while they were members. Voluntary associations organized for business purposes have no well defined legal status. They are not corporations, nor are they, strictly speaking, partnerships. They must, however, *ex necessitate*, be treated

as partnerships in all things not defined and governed by their articles of association and by-laws. In the absence of contravening statutes, the articles and by-laws, when not inimical to the rights of third persons nor contrary to public policy, govern the rights and relations and determine the pecuniary liability of the members *inter sese*. 1 Bacon, Benefit Societies and Life Insurance, §§ 34, 35, 36; *Burt v. Oneida Community*, 137 N. Y. 346, 33 N. E. 307, 19 L. R. A. 297.

The articles of association, as we have seen, gave to members the absolute right to withdraw the $100 membership fee and retire from the association without other condition than the giving of thirty days' notice. Neither articles nor by-laws reserved as against such retiring members any liability for debts then outstanding. This being the compact, the governing law of the members as among themselves, though not binding as against outside parties, must be held to relieve members retiring, at least during the solvency of the association, from liability for debts so far as remaining members are concerned. The remaining members, as parties to the compact, retain the assets, and must be held to assume the debts as between themselves and regularly retiring members. New members coming in thereafter, in the absence of concealment of debts or other misrepresentation, come in upon the same basis. While we have found no decision in which the exact question here presented has been determined, the following cases involve the principle and establish the rule that the right of withdrawal and exemption from liability as between the members must be determined by a construction of the compact of association. *Troy Iron & Nail Factory v. Winslow*, 45 Barb. 231; *Tenney, Ballister & Co. v. New England Protective Union*, 37 Vt. 64. In the present case, the issues were all directed to a determination of the rights and liabilities of the members as among themselves. The association was a going concern at the time the thirty-one members retired. They were not necessary parties.

It is next contended that the principles applicable to ordi-

nary partnerships, as conferring a right to enforce contribu-
tion in favor of the respondent as against his co-members,
should not apply, but that he should be required to look
solely to the assets of the association for reimbursement for
the moneys advanced by him to pay its debts. We find noth-
ing in the compact of association to meet this contingency.
The liability of the members must therefore be determined
by the law of partnership. We do, however, find in this
transaction the element of agency, which is the real ground
of liability to contribution as between ordinary partners.
The money was advanced with the knowledge of, and ac-
cepted as loans by, the directors acting within their powers
as agents of the association, and with the knowledge and
tacit consent of the entire membership. The money was
applied in payment of debts for which all the members were
liable. On plainest principles they should contribute to re-
imburse the respondent for these advances, after an exhaus-
tion of the assets.

"But in the settlement of disputes among the members, in
the division of property, in determining the liabilities of
members to creditors, in winding up the societies, and gen-
erally in all equitable proceedings, the courts will generally
treat the members as ordinary partners and associations as
partnerships, yet as far as possible giving effect to the arti-
cles of association of the members. No liability attaches to
members from the mere fact of membership, but must be de-
termined by the principles of the law of agency." 1 Bacon,
Benefit Societies and Life Insurance, § 29.

It is next claimed that the court erred in refusing to re-
quire the respondent first to exhaust the tribunals of the asso-
ciation by an arbitration of his demand. The only provision
in the by-laws looking to the creation of any tribunal is that
empowering the board of directors "to hold a regular meet-
ing once a month to act on all grievances and complaints,
to consider the merits and justness of the same." The evi-
dence shows that respondent did present his claims to the
board, that they were audited by the auditor, reported to the

board, and by the board approved. It is plain, therefore, that he has complied with the only provision in the by-laws contemplating the creation of a tribunal to pass upon the justice of his claim. While it appears that he did at one time agree to submit to an arbitration, that arbitrators were appointed and made findings charging him with certain accounts and finding a balance in his favor, all of the evidence indicates that the submission to arbitration was made with the understanding that it should meet the approval of all of the members of the association. After the report was made, several of the directors and many of the members failed to sign it. It is plain that the arbitration was abandoned by mutual consent.

It is next urged that, since this was an action for an accounting and dissolution of the association, the court should have taken into consideration debts due to other members of the association. So far as the record shows, all of the then members of the association were parties to this suit. It was incumbent upon them to make proof of their claims and establish their validity. No such proof was offered. The court held the decree open for this very purpose, but no member availed himself of the opportunity to present and establish his claim. The court committed no error in failing to provide for claims not asserted and proved.

- It is also claimed that the court erred in failing to find the title of the assets of the association vested in Hoppe as trustee for Levin. There was no error in this, for the reason that when Levin purchased and procured the assignment of the claims held by the Tacoma Association of Credit Men he was acting in direct antagonism to the duty he owed to his associates. After taking this assignment he had no right to prosecute an action at law against his associates. The fact that he did so under cover of a secret assignment to Hoppe for his benefit and in the name of the association of credit men gave him no rights in equity which he would not have secured by a mere payment of the claims. His remedy

was that invoked by the respondent here, namely, a suit in equity for an accounting and contribution. The court, by this decree, has accorded him that remedy, and he has no just cause for complaint.

But counsel urges that his claim should have been allowed for the full amount for which the property was bid in by Hoppe at the sheriff's sale. We think not. That sale and the costs attendant thereon were unnecessary. Neither the association nor any of its members, as such, derived any benefit from the prosecution of the suit in which the sale was made. It was inimical to their interests and contrary to Levin's duty as an associate. It would be inequitable to charge the other members with more than was necessary for the actual purchase of the claims. The evidence shows without dispute that these claims were purchased for $700. This should fix the limit of Levin's recovery.

It is claimed that the court committed error in giving the respondent a preference as against the assets of the association for the excess of his claim over that of Levin. While it is manifest that the respondent and Levin, by reason of their advances to pay debts of the association, had an equal right to participate in the assets of the association in proportion to their claims, it is also manifest that each of them, as a member of the association, was liable to the other for a contribution for any excess of the claim of the other. In view of this latter consideration, it seems plain that the respondent had a right to the first application of the assets of the association to a reduction of his claim to the same amount as that of Levin, before Levin should be permitted to participate in an equal division of the remaining assets.

A careful consideration of the record leads us to the conclusion that the court committed no reversible error.

The decree is affirmed.

CROW, C. J., MAIN, FULLERTON, and MORRIS, JJ., concur.